UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| GHASEM ATASHKHANEH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO.: 8:19-CV-2814-WFJ-AEP ) |
| SAM'S EAST, INC., | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Sam's East, Inc. hereby submits its Reply in Support of Motion for Summary Judgment.

**I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT**

No disputes of material fact exist establish Sam's acted improperly. Plaintiff's opposition to Sam's Motion for Summary Judgment raises no disputes of material fact. To the contrary, Plaintiff's opposition confirms Sam's had legitimate, non-discriminatory and non-retaliatory reasons for its decisions to promote other candidates – the selected candidates were more qualified than Plaintiff for the positions. Plaintiff relies instead on his own bare, self-serving speculation, and cites no supporting evidence showing he was equally or more qualified than the selected candidate for any position he claims he should have received. Likewise, Plaintiff cites no evidence establishing the decision makers involved in the promotions had any discriminatory or retaliatory animus toward him. Finally, Plaintiff fails to address, and therefore concedes, Sam's argument that any claim based on his 2014 demotion is time-barred, and that lower performance evaluations, Coachings, and denial of lateral positions are not adverse actions, thereby waiving those claims. The facts enumerated in Sam's Statement of Undisputed Material

Facts (Dkt. 24, "SOF"), and the legal authorities cited herein and in Sam's Memorandum in support of its Motion for Summary Judgment (Dkt. 23, "MSJ"), establish Sam's entitlement to summary judgment on all claims in Plaintiff's Complaint.

## II.   ARGUMENT

### A.   No Disputes of Material Fact Exist Concerning Why Plaintiff Was Not Offered the Positions at Issue.

Without citation to any record evidence, Plaintiff claims Sam's gave shifting reasons for not promoting Plaintiff, made up selection criteria after the fact, and asserts Sam's claims about Plaintiff's experience are false. However, Plaintiff's own recitation of the facts confirms, rather than disputes, the only reason Sam's has ever given for Plaintiff's non-selection: that other individuals were better qualified for the positions. Specifically, Plaintiff admits:

- Of the 15 MIT positions he applied for, 10 were closed without being filled, and he withdrew one of the applications.[1] Dkt. 35, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.") at 6; SOF at ¶¶ 26-28, 30-31, 33, 35, 37-40. Of the five AM positions he applied for, one was not filled. Pl. Opp. at 9; SOF at ¶ 16.

- Sean Youdelman, who was hired for the APM position Plaintiff applied for in September 2015, had worked in various positions including lot attendant, produce associate, Team Lead, and Supervisor in charge of produce, freezer and grocery. Pl. Opp. at 5. Youdelman had trained under the former asset protection manager and had learned the expectations of the position, and holds two associate degrees. Pl. Opp. at 6; SOF at ¶ 21.

- Karen Mitchell, who Janine Somoza hired for the APM position Plaintiff applied for in May 2016, had a bachelor's degree and experience in the claims department. Pl. Opp. at 6; SOF ¶ 22.

---

[1] Plaintiff was deposed in this case on June 29, 2020. Now, for the first time, he asserts he was forced to withdraw his application at Cole's direction after Cole allegedly told him hourly associates could not be managers in their current Club. Dkt. 37, Declaration of Ghasem Atashkhaneh ("Pl. Decl.") at ¶ 28; Dkt. 36, Plaintiff's Statement of Disputed Facts ("Pl. SODF") at ¶¶ 16-17. However, this new, self-serving statement contradicts Plaintiff's prior deposition testimony admitting he *voluntarily* withdrew his application because it was "the norm, it was if you are hourly associate, you cannot be manager in the same club." Dkt. 26-2, Pl. Depo. at 183:19-23.

- Alan Castro, who Janine Somoza hired for an APM position Plaintiff applied for in May 2016, had experience as a Tire Tech, Service Manager, Team Lead in various departments, completed the MIT program, had worked as an AM, and had prior management experience with a retailer. Pl. Opp. at 6; SOF ¶ 23.

- Amir Pishad, who Chris Seibert hired for an MIT position Plaintiff applied for in February 2016, had Sam's experience in various positions including as a Member Service Supervisor and holds an Associate's degree. Pl. Opp. at 7; SOF at ¶ 29.

- Nichole Moffat, who was hired for an MIT position Plaintiff applied for in August 2016, began as a Cashier, worked her way up to Member Services Supervisor, and holds an Associate's degree. Pl. Opp. at 7; SOF at ¶ 32.

- Peter Irrizarry Colon, who was hired for an MIT position Plaintiff applied for in September 2016, began at Sam's as a Tire Tech, was promoted to Team Lead, had prior experience as a supervisor at a different large retail store, and holds a Bachelor's degree. Pl. Opp. at 7-8; SOF at ¶ 34.

- Sabrina McCalpin, who Eddie Rejcek hired for an MIT position Plaintiff applied for in November 2019, worked for Sam's since 2000, began as a Cashier and worked her way up to Member Service Supervisor and Team Lead. Pl. Opp. at 7-8; SOF at ¶ 36.

- Alan Judd, who Kimberly Ouelette hired for an AM position Plaintiff applied for in September of 2015, was already an AM, completed management training in 1991,[2] and had over six years of experience as a manager at another large retailer. Pl. Opp. at 8-9; SOF at ¶ 15.

- Michael Viramontes, who LaShawn Gilmore hired for an AM position Plaintiff applied for in April 2016, completed the MIT program, holds an Associate's degree, had experience with Sam's as a Merchandiser, in Receiving, and as a Team Lead, and had prior experience with a large retailer. Pl. Opp. at 9; SOF at ¶ 17.

- Rebekah Melton, who was hired for an AM position Plaintiff applied for in July 2016, completed the MIT program, and had worked in Member Services before becoming a Team Lead. Pl. Opp. at 9; SOF at ¶ 18.

---

[2] Plaintiff claims Sam's has asserted completion of the MIT program was the only way to become an AM. That is inaccurate. A Sam's associate is only eligible for an AM position by first completing the MIT program and then being hired as an AM, or an associate could be moved into an AM position from another salaried management position such as APM. Dkt. No. 26-2, Deposition of Sean Youdelman at 16:7-19, 20:25-23:20. It is undisputed that Plaintiff has never completed MIT training, nor has he ever held a salaried management position at Sam's, so he would not be eligible for an AM position. SOF ¶¶ 3-4. Moreover, Plaintiff admits he was not qualified for an AM position. SOF at ¶ 14.

- Odilio Pena, who was hired for an AM position Plaintiff applied for in September 2016 by Wylene Rose, was already an AM, completed the MIT program, and held a Bachelor's degree. Pl. Opp. at 9-10; SOF at ¶ 19.

To establish his *prima facie* case, Plaintiff must show he and his comparators are "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1224 (11th Cir. 2019). This means plaintiff and his comparators "must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Id*. at 1355 (internal quotations omitted). In comparing Plaintiff to the individuals who were hired, Plaintiff had no college degree, unlike Youdelman, Mitchell, Pishad, Moffat, Colon, Viramontes, and Pena. SOF at ¶¶ 17, 19, 21-22, 29, 32, 34. Although he had managed restaurants, Plaintiff does not claim to have had previous retail management experience, unlike Castro, Colon, Judd, and Viramontes. SOF at ¶¶ 15, 17, 23, 24; Pl. Opp. p. 10. Plaintiff was not already an AM when he applied for the AM positions, unlike Castro, Judd and Pena, and had not completed MIT training like Castro, Judd, Viramontes, Melton and Pena. SOF at ¶¶ 3-4, 14-15, 17-19, 23. Finally, Plaintiff had no experience in Sam's Member Services, deemed a critical Sam's department; however, Pishad, Moffat, McCalpin and Melton did have that experience. SOF at ¶¶ 18, 29, 32, 36. Clearly, as Plaintiff's own admissions lay bare, Sam's had legitimate reasons for hiring these individuals over Plaintiff based on their superior education, formal training, Sam's management and/or Member Services experience, and experience with other retailers.

Critically, Plaintiff has not cited to any record evidence to support his claim that Sam's legitimate business reasons for its promotion decisions were a pretext for either discrimination or retaliation. Plaintiff conjures out of whole cloth the suggestion Sam's is manufacturing evidence that he did not seek out developmental opportunities within his Club to explain why he was not promoted. However, other than participating in Sam's Club University, Plaintiff cites to

no evidence that he obtained any experience in Club departments other than those to which he was primarily assigned. SOF ¶¶ 3-4. Although Plaintiff claims he held Team Lead positions "in various departments until approximately February 2014" he cites to absolutely no record evidence identifying these "various departments" or showing he had experience in fresh meat, claims, receiving or Member Services. *See* Pl. Opp. at 3. Nor does he cite to evidence he actually had such experience. *See generally* Pl. Decl., Pl. SODF. Instead, Plaintiff merely claims Sam's cannot prove he did not "obtain" experience in different areas of the Club – a proposition that flies in the face of Club Manager Cole's factually undisputed testimony that Plaintiff had no experience in Member Services, the fresh meat area, receiving, or claims, nor had he taken Cole's advice to obtain such experience. SOF at ¶¶ 3, 11; Pl. Opp. at 4; Pl. Depo. at 13:23-17:13, 72:3-73:21, 75:19-76:7, 79:1-17.

In sum, Plaintiff does nothing but assert that he met the minimum qualifications necessary to be considered for the positions he sought,[3] that he attended Sam's Club University, and that he has worked as a Team Lead. However, these assertions fail to challenge, much less show as Plaintiff must, that Sam's explanation for Plaintiff's non-selection was more likely than not discriminatory or retaliatory. *See Smith v. Horner*, 839 F.2d 1530, 1538 (11th Cir. 1988)(holding that, ordinarily, an argument of pretext fails when an employer selects the person it believes to be best qualified).[4] Because Plaintiff has presented no affirmative evidence to show that a genuine issue of material fact exists supporting his bare claim of pretext, Sam's is entitled to judgment as a matter of law.

---

[3] Plaintiff admits he was not qualified for the AM positions. SOF at ¶ 14.
[4] *See also Brooks v. Cty. Comm'n*, 446 F.3d 1160, 1163 (11th Cir. 2006)(to show pretext, a "plaintiff must show the disparities between the successful applicant's and [his] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.)

### B. It is Undisputed the Decision Makers Held No Discriminatory or Retaliatory Animus Towards Plaintiff.

Not only does Plaintiff fail to show that Sam's promotion decisions were a pretext for discrimination or retaliation, he also fails to show that any of the decision makers involved held any discriminatory or retaliatory animus towards him. First, nowhere in Plaintiff's opposition does he cite to any evidence, or even argue against the fact that many of the decision makers involved in the hiring process for the positions Plaintiff applied for did not know Plaintiff, his age, national origin, or his race. Aside from Cole, Gilmore, Seibert and Rejcek (who either knew Plaintiff, or at least had received an email from him) there is no evidence the other decision makers (Somoza, Ouelette, Rose, Lail and Polequin) knew Plaintiff or had information concerning his race, national origin or age. SOF at ¶¶ 15-19, 22-23.

Second, seven of the decision makers (Somoza, Seibert, Rejcek, Ouelette, Rose, Lail and Polequin) are the same race as Plaintiff and five of the decision makers (Somoza, Rejcek, Ouelette, Rose and Lail) are over the age of 40. SOF at ¶¶ 19, 22-23, 28-29, 36. This lends itself to presumptions against discrimination that Plaintiff has not even attempted to overcome through the designation of actual evidence. *See Ehrhardt v. Haddad Rest. Group, Inc*., 443 Fed. Appx. 452, 456 (11th Cir. 2011); *Elrod v. Sears, Roebuck & Co*., 939 F.2d 1466, 1471 (11th Cir. 1991). Moreover, six of the positions were filled by persons who are the same race as Plaintiff (Youdelman, Mitchell, Pishad, Moffat, Judd, and Melton), and three of the individuals were also over the age of 40 (Mitchell, Judd, and McCalpin). SOF at ¶ 15, 18, 21-22, 29, 32, 36. One individual, Judd, is older than Plaintiff. SOF at ¶ 15. All of these undisputed facts support Defendant's position it did not discriminate against Plaintiff

Finally, there is no evidence the decision makers involved in the hiring processes knew Plaintiff participated in any protected activity. Plaintiff claims that in November 2015 he voiced

concerns regarding what he believed to be discrimination, followed by charges of discrimination with the EEOC in January 2016 and December 2016. Pl. SODF at ¶¶ 15, 17, 30. As such, the September 2015 promotions of candidates Youdelman (hiring manager Cole) and Judd (hiring manager Oulette) occurred before any alleged protected activity by Plaintiff. SOF at ¶¶ 15, 21. Plaintiff's November 2015 email included Gilmore and Rejcek as recipients, but there is no evidence any of the other hiring managers were aware of the email, and there is no evidence that either of the EEOC charges were known to any of the hiring managers prior to making their promotion decisions. Gilmore hired Viramontes as an AM in April 2016, six months after Plaintiff's email, and Rejcek hired McCalpin for a MIT position in November of 2019, four years after the email. SOF at ¶¶ 17, 36. These protracted periods of time are insufficient to establish any temporal proximity between Plaintiff's activity and the hiring decisions.[5]

### C.  Plaintiff Concedes His Non-Selection for Lateral Positions, Performance Review and Coachings Are Not Adverse Employment Actions Upon Which He Can Base His Claims.

Plaintiff cites to no law, nor does he designate any facts or make any argument, in opposition to Defendant's request for summary judgment as to Plaintiff's claims that he was not hired for lateral positions, that he received a lower performance review than he thought he should, and that he received unfair Coachings, on the basis that these decisions are not adverse employment actions.[6] As such, Plaintiff concedes these arguments. *See United Specialty Ins. Co.*

---

[5] *See Nichols v. CSG Sys., Inc.,* 245 F. App'x 937, 941 (11th Cir. 2007) (finding no inference of retaliation arising from temporal proximity where nearly 10 months passed between the time of the alleged protected activity and the alleged adverse action); *Brown v. Ala. Dept. of Transp.,* 597 F.3d 1160, 1182 (11th Cir. 2010) (holding 3-month timespan too long); *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007) (finding, in the absence of other evidence showing causation, three to four month time gap between protected conduct and adverse employment action is insufficient to establish causation on its own); *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (absent other evidence of causation, a 3.5 month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation).

[6] *See Austin v. Progressive RSC, Inc*., 265 F. App'x 836, 845 n. 9 (11th Cir. 2008) (noting lateral moves do not support failure to promote claims); *Anderson v. United Parcel Serv., Inc*., 2007 WL 9709991, at *10–11 (N.D. Ga.

*v. Davis*, Case No. 18-62451, 2020 WL 144548, 6 (S.D. Fla. Feb. 19, 2020) ("A 'party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.'") (quoting *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014)).[7] Regardless, Plaintiff's conclusion that three of his Coachings were reversed because it was determined that he was "not at fault" is wholly unsupported by the evidence. Pl. Opp. at 13-14. Instead, the only record evidence shows Alejandro Figueroa determined: (1) the October 25, 2017 Coaching was justified but that a verbal conversation about the underlying incident might be more effective; (2) the January 2018 Coaching was fair but cancelled because, although he did not follow Sam's absenteeism notification policy, Plaintiff had given his manager informal notice that he would be absent; and (3) the August 2018 Coaching was reversed because although Plaintiff's performance was poor, there was no written evidence that he had been instructed to perform a particular task. SOF at ¶¶ 48-51. As such, the evidence does not support Plaintiff's conclusory assertion he was "not at fault" for these incidents, and therefore does not support his argument that the Coachings were retaliatory. In addition, these Coachings occurred years after Plaintiff filed his EEOC charges, thus their timing does nothing to support his claims.

### III.     CONCLUSION

The record evidence shows Sam's proffered reasons for the alleged adverse actions are legitimate, non-discriminatory and non-retaliatory. No genuine issues of material fact exist precluding summary judgment on all Plaintiff's claims in favor of Defendant.

---

Jan. 31, 2007), aff'd, 248 F. App'x 97 (11th Cir. 2007) (holding "[a]s valuable as the [lateral] position . . . may have been by intangible measures, the failure to be reassigned to a lateral position within a company, where such reassignment would not materially change the terms or conditions of employment, does not constitute an actionable adverse employment action under Title VII.")·); *Barnett v. Athens Regional Medical Center Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013)(written reprimands or negative performance reviews not resulting in "termination, demotion, suspension, a reduction in pay, or a change in job duties" or any other "tangible effect" on employment are not adverse employment actions).

[7] By failing to address Sam's argument, Plaintiff also concedes his 2014 demotion are time-barred.

Dated January 19, 2021

Respectfully submitted,

LITTLER MENDELSON, P.C.
111 North Orange Avenue, Suite 1750
Orlando, Florida 32801
Telephone: (407) 393-2900
Facsimile: (407) 393-2929

By: */s/ Allison Wiggins*
Kimberly J. Doud
Florida Bar No.: 523771
Email: kdoud@littler.com

Allison Wiggins
Florida Bar No.: 105733
Email: awiggins@littler.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 19th day of January 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served on all counsel of record via transmission of notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner.

By: */s/ Allison Wiggins*
Allison Wiggins

4814-3354-3126.5 080000.1376