UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GHASEM ATASHKHANEH,

    Plaintiff,

v.                                                                      CASE NO. 8:19-cv-2814-WFJ-AEP

SAM'S EAST, INC.,

    Defendant.
_____/

## ORDER GRANTING SUMMARY JUDGMENT

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 23), including the statement of undisputed facts, declarations, depositions, and exhibits (Dkts. 24 & 26), Plaintiff's responses (Dkts. 35 & 36), and Defendant's reply (Dkt. 39). After hearing argument of counsel, and after careful review of the parties' submissions and the entire file, the Court grants summary judgment.

## BACKGROUND

In this removed diversity action, Plaintiff Ghasem Atashkhaneh sues his present employer, Defendant Sam's East, Inc. ("Sam's"), for discrimination and retaliation based on race, national origin, and age in violation of the Florida Civil Rights Act of 1992 ("FCRA"). Dkt. 1-4. Plaintiff was over 50 years old at the

time of the alleged discriminatory and retaliatory action.  His declared race is white, or Caucasian, and his national origin is Iranian.[1]

**Events prior to actionable conduct (i.e., before January 25, 2015)[2]**

In March 2005, Plaintiff began working for Sam's in the Wesley Chapel store as an overnight merchandiser.  Dkt. 26-1, Pl.'s Dep. at 17, 71–72; Dkt. 26-18, Figueroa Munoz's Decl. ¶ 4.[3]  On August 17, 2008, Plaintiff was promoted to Bakery Team Lead, one of several "Team Lead" positions at Sam's.  Dkt. 26-18, Fig. Decl. ¶ 4.  A Team Lead position is nonmanagerial, non-supervisory, and non-salaried.

In February 2014, Sam's restructured by consolidating the five Team Lead positions into three supervisory ones.  Dkt. 37-3 at 1–2.  All five were interviewed and three were placed in the new positions.[4]  *Id*. at 2.  Plaintiff was not selected and was returned to his original position as an overnight merchandiser.  *Id*.  When

---

[1] On the information sheet as part of his initial application at Sam's, Plaintiff chose his race as "White" out of the 5 options given, which included "Asian." (Dkt. 26-1, Pl.'s Dep. at 22–23; Dkt. 26-3 at 2).  This was the only information regarding race supplied to Sam's.  Company records do not indicate Plaintiff's Iranian national origin because Sam's does not collect information about or track the national origin of its employees.  At the hearing, the Court inquired of both counsel concerning Plaintiff's race and national origin and confirmed these facts as relevant and binding for purposes of deciding this case.

[2] All of Plaintiff's discrimination claims are restricted to a start date of January 25, 2015, which is 365 days prior to his filing an EEOC charge.  *See* Fla. Stat. § 760.11(1).

[3] Deposition page numbers in this order will refer to the actual page, as opposed to the condensed, four-to-a-page format as found on the electronic docket.  For example, page 17 is electronically docketed at page 6 of docket 26-1, and pages 71 and 72 at page 19.  The depositions and declarations will be further abbreviated to assist the reader.

[4] The three individuals selected were Josipa Krekic (white, 44), Sean Youdelman (white, 30), and Shane Hanold (white, 35).  Dkt. 36 ¶ 2.  Plaintiff and "Lucy" (Hispanic, 40s) were not.  *Id*.

he approached the store manager (Alan Cole) about his demotion and the selection of the three younger, white employees, he suggested Plaintiff "would be better off taking a severance package and retiring." [5]  *Id*.

In July that same year, Plaintiff applied for and was promoted to Overnight Team Lead.  *Id*. at 2–3; Dkt. 26-18, Fig. Decl. ¶ 4.  Plaintiff has continuously held a Team Lead position since July 5, 2014.  Dkt. 26-18, Fig. Decl. ¶ 4.

**Events beginning January 25, 2015, through the filing of this action**

Between January 2015 and December 2016, Plaintiff applied for 23 openings: 5 Assistant Manager ("AM") positions, 3 Asset Protection Manager ("APM") positions, and 15 MIT ("Management In Training") positions.[6]  Dkt. 26-2, Pl.'s Dep. at 168, 174, 179; Dkt. 26-18, Fig. Decl. ¶¶ 9–30.  The decision-makers did not select Plaintiff for the 11 positions actually filled, his job performance evaluations began to dip, and he received "coaching" on several occasions.  Sam's has an open-door policy for contesting non-selection or disciplinary matters.  Dkt. 24 ¶ 7.  The disciplinary system is three-tiered, and if the employee has a second or third-level infraction, the employee may not apply for any open position.  Dkt. 24 ¶ 6.

---

[5] Although his demotion in 2014 is not actionable, it may be considered as history in determining the actionable discrimination and retaliation claims.
[6] The terms MIT program, MIT training, and MIT position are used interchangeably in the parties' filings.

3

On January 27, 2016, Plaintiff filed his first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[7] Dkt. 26-3 at 1. On the written charge of discrimination, Plaintiff declared his race as Asian, for the first time, and his national origin as "Iranian-Middle Eastern."[8] Dkt. 26-3 at 1. Plaintiff wrote in the charge that he had "applied for the MIT (Manager In Training) program since 2010" without success. *Id*. He continued, "[h]owever, younger non-Iranian with less experience than I have applied for the MIT program and have been selected." *Id*. He asserted race, national origin, and age discrimination and retaliation based on his failure to be promoted and his "previous complaint of discrimination." *Id*.

Before the EEOC dismissed the first charge on September 16, 2017, Plaintiff filed a second charge of discrimination on December 2, 2016. Dkt. 26-18 at 11, 13. The second charge asserts only retaliation and claims in full:

> I complained to Human Resources of discrimination and nothing was done to remedy the situation. I filed a charge of discrimination with the EEOC in December 2015 and additional retaliatory action occurred. I have received lowered evaluations, continue being deny promotion, set up for failure by being assign more tasks without proper training. I believe I have been retaliated against because I filed [the first charge].

---

[7] All of Plaintiff's discrimination claims are restricted to a start date of January 25, 2015, which is 365 days prior to the filing of his claim with the EEOC. *See McCullough v. Nesco Resources LLC*, 760 F. App'x 642, 646 (11th Cir. 2019) (citing Fla. Stat. § 760.11(1)).
[8] It is crucial to note that none of the decision-makers were aware of the EEOC charges. Dkt. 26-2, Pl.'s Dep. at 221.

*Id*. at 13. The EEOC dismissed this charge on August 29, 2018. *Id*. at 14.

On December 13, 2016, just days after the second charge was filed, Plaintiff became Merchandising Team Lead and remains in that position. Dkt. 26-18, Fig. Decl. ¶ 4. The circumstances surrounding the arguably actionable conduct pertaining to the three types of positions (AM, APM, and MIT) will be discussed below.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is genuine if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When deciding whether a reasonable jury could return a verdict, the Court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

The record reflects, and the parties agreed at the hearing, there is no direct evidence of discrimination. Dkt. 24 ¶ 55; Dkt. 26-2 at 221, 230–31. Indirect, circumstantial evidence of discrimination must be proven according to the

*McDonnell Douglas* burden-shifting test. *See Edmond v. Univ. of Miami*, 441 F. App'x 721, 723 (11th Cir. 2011) (holding FCRA claims are governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)); *Chapman v. Al Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (noting *McDonnell Douglas* framework used for age discrimination claims based on circumstantial evidence).

To establish a *prima facie* case of discrimination for failure to promote, the plaintiff must show (1) he is a member of a protected class; (2) he was qualified for the position and he applied for it; (3) he was not considered for the position despite his qualifications; and (4) equally or less qualified individuals outside of his protected class were hired for the position. *Smith v. Thomasville Ga.*, 753 F. App'x 675, 689 (11th Cir. 2018) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997)). The fourth requirement was redescribed to seemingly lessen the proof at the *prima facie* case stage. *Voudy v. Sheriff of Broward Cnty.*, 701 F. App'x 865, 869 (11th Cir. 2017). In *Voudy*, the plaintiff was not required to show the successful candidate was equally or less qualified but only that the plaintiff's employer "either continued to attempt to fill the positions or in fact filled the positions with persons outside of his protected class." *Id*.

Once the rebuttable presumption of the *prima facie* case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for failing to promote. *Underwood v. Perry Cnty. Comm'n*, 431 F.3d 788, 794

6

(11th Cir. 2005). If the employer does so, then the burden falls again on the plaintiff to show the employer's reason is pretextual by "significantly probative evidence." *Id.* (citing *Zaben v Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997)).

The same burden-shifting framework applies in age discrimination cases. There, the inquiry examines the protected class of 40- to 70-year-olds and the equally or less qualified individual as substantially younger than the plaintiff. *Cooper v. Ga. Dep't of Transp.*, No. 19-14230, 2020 WL 6746741, at *8 (11th Cir. Nov. 17, 2020) (citing *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015)). Three years younger is considered substantial. *Id.* (citing *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997)). Unlike discrimination based on race or national origin, age must be the "but-for" cause of the employer's failure to promote. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

**Failure to Promote: *Prima Facie* Case**

First, both Plaintiff's 2008 denial for Grocery Team Lead and his 2014 demotion from a Team Lead position are not actionable. These claims are time-barred because the conduct occurred prior to 365 days of filing his first EEOC complaint on January 27, 2016, and, in any event, were not articulated in the charges filed. *See McCullough v. Nesco Res., LLC*, 760 F. App'x 642, 646–47 (11th Cir. 2019). The cut-off date is January 25, 2015. Even if those pre-January

7

2015 claims were administratively exhausted, failure to be selected for a lateral move is not an adverse action giving rise to a failure to promote. *Austin v. Progressive RSC, Inc.*, 265 F. App'x 836, 845 n.9 (11th Cir. 2008) (transferring employee other than plaintiff to a lateral position is not considered a promotion); *Anderson v. United Parcel Serv., Inc.*, No. 1:05-cv-2221-CCH, 2007 WL 9709991, at *10–11 (N.D. Ga. Jan. 31, 2007) (stating "the failure to be reassigned to a lateral position within a company, where such assignment would not materially change the terms or conditions of employment, does not constitute an actionable adverse employment action"), *aff'd*, 248 F. App'x 97 (11th Cir. 2007).

Next, the actionable claims include those regarding the 11 (of the initial 23) positions that Sam's actually filled. These salaried positions of AM, APM, and MIT require different qualifications. Plaintiff does not hold either an associate's or bachelor's degree. He has successfully completed Sam's Club University program but not MIT training. Dkt. 37-3 at 3. Plaintiff has never held a supervisory position with Sam's. Dkt. 26-1, Pl.'s Dep. at 17. Plaintiff has never held a managerial retail position, despite his managing a restaurant before his employment at Sam's. Since December 13, 2016, Plaintiff has continuously held a Team Lead position, which is a non-salaried position without supervisory responsibilities.

*Positions of Assistant Manager (4 Openings Filled)*

The AM position requires completion of Sam's MIT program—or holding a salaried management position for a year, such as APM—and an associate's degree.[9] Dkt. 26-6, Youdelman Dep. at 16, 20–23. Plaintiff holds no post-secondary degree, and he has neither completed the MIT program nor held a salaried position at Sam's. Dkt. 24 ¶¶ 3–4; Dkt. 26-1, Pl.'s Dep. at 10–11. Of the four selected for the AM positions, three had completed Sam's MIT training, all four held a minimum of an associate's degree, and the one lacking MIT training was already an AM and had over six years' store management experience at another large retailer.[10] Dkt. 24 ¶¶ 15, 17–19; Dkt. 36 at 7–10. Plaintiff admitted he was not qualified for an AM position. Dkt. 24 ¶ 14; Dkt. 26-1, Pl.'s Dep. at 176, 178–79.

Apart from the comparative qualifications of the recipients and Plaintiff, two of the AMs were members of his same race (white), and one was older. Any discrimination based on Plaintiff's national origin of Iranian cannot be measured or determined because Sam's did not collect data on national origin and did not track

---

[9] Although Gladys Lopez testified that MIT training is a prerequisite for any salaried management position, her testimony stands alone in this regard, and she left Sam's as its HR market manager in June 2015. Dkt. 37-1, Lopez Dep. at 8, 24. Plaintiff did not apply for any of the openings at issue until September 2015. Dkt. 24 at 5–14.

[10] Rebekah Melton (white, 27, AM in Lakeland), Odilio Pena (Hispanic, 39, AM in St. Petersburg), and Michael Viramontes (Hispanic, 29, AM in South Tampa) had completed MIT training. Alan Judd (white, 59) was already an AM when selected for AM at Sam's Melbourne.

national origin.  Plaintiff cannot show that Sam's selected individuals outside of Plaintiff's protected class of race, age, or national origin for the AM positions and, therefore, has not established a *prima face* case of discrimination.

*Positions of Asset Protection Manager (3 Openings Filled)*

The APM position does not require completion of the MIT program, one year at a salaried position, or an associate's degree.  Dkt. 24 ¶20; Dkt. 26-12, Crabtree Dep. at 16.[11]  The parties agree Plaintiff was qualified for the position.  Plaintiff applied for APM at Wesley Chapel and two other Sam's locations.  Dkt. 24 ¶¶ 21–23.  Sean Youdelman (white, 25) was selected at Wesley Chapel.[12]  Dkt. 24 ¶ 21.  Youdelman was hired in 2008 as a lot attendant and moved his way up to produce associate, Produce Team Lead, Grocery Produce Supervisor, and finally to APM in 2015.  *Id*.  Youdelman never completed the MIT program but trained under the prior APM and has two associate's degrees.  *Id*.  The Sam's Wesley Chapel manager, Alan Cole (black, 54), earlier advised Plaintiff to seek out experience in other areas at Sam's, but Plaintiff did not heed his advice.[13]  *Id*.

---

[11] Jonathan Crabtree never completed the MIT program and was promoted from APM to Grocery Manager, both at Wesley Chapel.  Dkt. 36 ¶ 10.  Crabtree, however, transferred to Wesley Chapel from South Tampa to fill an APM position.  Dkt. 26-12, Dep. Crabtree at 11–13.

[12] Sam's describes Youdelman as 25, and Plaintiff describes him as 30.  *Compare* Dkt. 24 *with* Dkt. 36.  These discrepancies are explained by using the time of the aggrieved conduct around 2015 versus the time the witnesses were deposed.

[13] Alan Cole held the Sam's Club manager position at Wesley Chapel for 15 years until he left in April 2019.  Dkt. 26-4, Cole Dep. at 7–8.

10

Youdelman and Plaintiff are members of the same protected racial class. Although Youdelman is far younger than Plaintiff, Youdelman was more qualified.

The remaining APM selections were also more qualified in terms of education and experience. Karen Mitchell (white, 48) was hired by Sam's in 2006, has a bachelor's degree, and had vast experience in the claims department, which is supervised by the APM. Dkt. 24 ¶ 22. Alan Castro (Hispanic, 33) completed the MIT program, had experience in retail management prior to Sam's, and held Team Lead positions in various departments at Sam's to gain experience. Dkt. 24 ¶ 23. Both APMs were better qualified than Plaintiff, and Mitchell was in the same protected class in both age and race. Plaintiff has not shown that his comparators were "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc).

An additional factor militating against discrimination concerns the respective classes of the decision-makers. For all three APM positions, the decision-makers were over 40 years old.[14] Dkt. 24 ¶¶ 21–23. Where the decision maker is in the same protected class, courts often find this relevant and refuse to find age discrimination. *Ehrhardt v. Haddad Rest. Group, Inc.*, 443 F. App'x 452, 456 (11th Cir. 2011); *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1471 (11th

---

[14] The decision-makers were also the same race as Plaintiff: white.

Cir. 1991) (explaining burden is higher to show discharge motivated by age where decision-maker is within protected class).

*Positions of Manager In Training (4 Openings Filled)*

The MIT position, also referred to as MIT training or the MIT program, does not require one year of a salaried position or a special degree. The parties agree Plaintiff was qualified for the MIT position. Plaintiff applied for 15 MIT positions at various Sam's locations including Wesley Chapel. Dkt. 36 ¶ 13. An MIT position is typically given to an employee from a different Sam's store and often requires relocating. Dkt. 26-12, Crabtree Dep. at 16–17.[15] Sam's closed ten of the 15 MIT positions without being filled, and Plaintiff withdrew his application for one position.[16] Dkt. 24 ¶ 16.

The relevant four MIT positions were filled by Amir Pishad (white, 27, Brandon), Nichole Moffat (white, 22, Pinellas Park), Peter Irrizarry Colon (Hispanic, 36, North Lakeland), and Sabrina McCalpin (black, 44, Wesley Chapel). Dkt. 39 at 3; Dkt. 24 ¶¶ 29, 32, 34, 36. One candidate held a bachelor's degree, two held associate's degrees, and the fourth had worked at Sam's since

---

[15] Crabtree explained that once he held the APM position at Wesley Chapel, he had the option of applying for an MIT program, with no guarantee of the Sam's location, or Grocery Produce Manager: "[It was] more convenient for me to try to do [the Grocery Produce Manager at Wesley Chapel] instead of going through the MIT program in a different city and a different club with the uncertainty of where I could end up afterwards." Dkt 26-12 at 17.

[16] Plaintiff withdrew his application at Wesley Chapel because Cole told him Sam's did not want an hourly associate to become a manager in the same store. Dkt. 35 at 6; Dkt. 36 ¶ 16.

2000 with experience in the critical member services department. *Id*. All four candidates were better qualified than Plaintiff. *Id*. Plaintiff has failed to meet the fourth prong of the *prima facie* case because the comparators must be "similarly situated [to the plaintiff] in all relevant respects." *See Johnson v. Coffee Cnty. Comm'n*, 714 F. App'x 942, 946–47 (11th Cir. 2017) (upholding denial of promotion claim on summary judgment where selected candidate was licensed and quoting *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010)).[17] Apart from qualifications, Pishad and Moffat were white and McCalpin was over 40 and as such were members of Plaintiff's protected class. No *prima facie* case has been established.

**Failure to Promote: Legitimate, Non-discriminatory Reason/Pretext**

If, for arguments' sake, Plaintiff could satisfy all four elements of his *prima facie* case, the burden shifts to Sam's to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for any adverse employment action. Sam's reasons for hiring the selected individuals over Plaintiff was that all other applicants were more qualified. Dkt. 23 at 9. On its face, the record supports this reason. The burden then shifts back to Plaintiff to show the reason was pretextual: the reason must be false; and discrimination must be the true reason for

---

[17] Two of the interviewing managers for the four MIT positions were white and one was over 40. Dkt. 24 ¶¶ 29, 32, 34, 36.

13

the adverse action. *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

"A plaintiff cannot prove pretext in the context of a promotion by simply arguing or even by showing that he was better qualified." *Johnson*, 714 F. App'x at 946–47 (quoting *Springer v. Convergys Customer Mgmt. Group*, 509 F.3d at 1344, 1349 (11th Cir. 2007)). The divide between the successful applicants' and the plaintiff's qualifications must be of "such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Brooks*, 446 F.3d at 1163 (citing *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *cert. denied*. 546 U.S. 960 (2005)).[18] Plaintiff has made no showing of pretext.

**Retaliation**

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims based on circumstantial evidence. *Hilliary v. FlightSafety Int'l, Inc.*, 778 F. App'x 835, 840 (11th Cir. 2019). Retaliation claims under the FCRA are subject to the *McDonnell Douglas* burden-shifting analysis. *See Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). To establish a *prima facie* case of retaliation, Plaintiff must show 1) that he engaged in protected activity, 2) that

---

[18] *See also Smith v. Horner*, 839 F.2d 1530, 1538 (11th Cir. 1988) (holding plaintiff failed to show pretext by preponderance of evidence where employer's hiring personnel testified selected candidate was best qualified based on experience and education).

14

he suffered an adverse employment action, and 3) that the adverse employment action was causally related to Plaintiff's protected activity. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). Causation must be established by showing the protected activity was the "but-for" cause of the adverse action. *Cooper v. Ga. Dep't of Transp.*, No. 19-14230, 2020 WL 6746741, at *7 (11th Cir. Nov. 17, 2020) (citing *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018)).

Plaintiff contends he received lower performance evaluations and coachings after he filed the EEOC charges. In May 2016, he received a "Solid Performer" rating from his supervisor Christopher D'Avanzo (white, 36) rather than the "Exceeds Expectations" he had previously received from D'Avanzo. Dkt. 24 ¶ 42. First, Plaintiff cannot show actionable conduct without showing knowledge of the protected activity on the part of Sam's. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997). Neither D'Avanzo nor Store Manager Cole were aware of the EEOC charges in May 2016, and Cole was not aware until he received the written dismissal from the EEOC sometime in 2017. Dkt. 24 ¶¶ 41–45.

In addition to the lack of knowledge of the protected expression, the performance evaluations are too distant in time from the adverse action of filings EEOC charges to form the basis of a retaliation claim. *See Nichols v. CSG Sys.,*

15

*Inc.*, 245 F. App'x 937, 941 (11th Cir. 2007) (finding passage of 10 months between protected activity and alleged adverse action fails to raise inference of retaliation).  Another factor detrimental to Plaintiff's case is the absence of adverse action in falling from an "A" grade to "B" grade with no effect on the material terms and conditions of Plaintiff's employment, such as his salary and position as Team Lead.  *See Barnett v. Athens Reg'l Med. Ctr., Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013) (holding written reprimands or negative reviews having no "tangible effect" are not actionable).[19]

Plaintiff did not receive negative evaluations until 2017 when he began receiving written coachings.  The five coachings Plaintiff received occurred no earlier than October 25, 2017, which was almost 22 months after his first EEOC charge and nearly 11 months after his second. Dkt. 24 ¶ 48.[20]  The first written coaching made by Co-Manager Jumana Kader (white, 32), which was overturned by Figueroa Munoz (Hispanic, 45), resulted from his alleged rude behavior at a meeting.  *Id*.  Of the five coachings, the first three were overturned by Figueroa and/or Market Manager Don Nickens (white, 61).  Dkt. 24 ¶¶ 49–51.

---

[19] *See also Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010) (finding no inference of retaliation where three months elapsed between protected activity and adverse action).
[20] Plaintiff did not apply for any positions after August 2017. Dkt. 24 ¶ 47.

The two coachings that were not overturned occurred in 2019, more than two years after the EEOC dismissed the first charge. Dkt. 24 ¶¶ 52–54. Merchandise Manager Jonathan Crabtree (white, 35) issued a second-tier written coaching in September 2019 after Plaintiff chose to leave pallets of merchandise out on the floor at the end of his shift while he wrote an email explaining how he could not complete his work. Dkt. 24 ¶ 52. In December 2019, Club Manager Jason Lee (white, 45), who replaced Cole, issued a third-tier coaching for Plaintiff's failure to complete a required audit and to prepare for a wireless event at the store. Dkt. 24 ¶ 54.

Plaintiff failed to demonstrate a *prima facie* case for retaliation because none of the supervisors or managers knew of the EEOC charges, the protected activity and adverse action lacked temporal proximity, and Plaintiff cannot show that but for his filing EEOC charges he would not have received written coachings. Assuming Plaintiff could show a *prima facie* case, Plaintiff cannot show the legitimate, nondiscriminatory reasons of subpar performance and misconduct were pretextual. *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1236 (11th Cir. 2007) (performance); *Scott v. Fla. Dep't of Child. & Fam. Servs.*, No. 3:04cv275-RVEMT, 2005 WL 2175179, at *6 (N.D. Fla. Sept. 6, 2005) (misconduct).

Accordingly, Defendant's motion for summary judgment (Dkt. 23) is granted. The Clerk is directed to enter judgment in favor of Defendant and close the case.

**DONE AND ORDERED** at Tampa, Florida on February 18, 2021.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of record